UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rembrandt Enterprises, Inc.,

               Plaintiff,               Civ. No. 15-2913 (RHK/HB)
                                                 **ORDER**

v.

Illinois Union Insurance Co.,

               Defendant.

---

      Plaintiff Rembrandt Enterprises, Inc. ("Rembrandt") commenced this action against its insurer, Defendant Illinois Union Insurance Company ("Illinois Union"), after Illinois Union refused to cover losses stemming from an outbreak of highly pathogenic avian influenza (commonly known as the "bird flu"). Presently before the Court are the parties' cross-Motions for Summary Judgment. For the reasons set forth below, the Court will deny both Motions.

      Rembrandt owns and operates commercial poultry farms in several states, including Minnesota and Iowa. In 2011, it purchased a Premises Pollution Liability III Insurance Policy ("the Policy") from Illinois Union. The Policy insured Rembrandt's farms against losses caused by "New Pollution Conditions," defined as "[t]he discharge, dispersal, release, escape, migration or seepage of any . . . irritant, contaminant, or pollutant . . . on, in, into, or upon [covered] land and structures." (See Veenstra Decl. Ex. 1.) Excluded from coverage were, *inter alia*, losses "arising out of or related to the

presence or removal of naturally occurring materials," unless those materials were "present . . . as a result of human activities or human processes." (Id.)

The Policy was in effect in December 2014, when the strain of bird flu at issue was discovered in the United States. (Id. Ex. 2.) The United States Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") could not definitively identify the virus's source, but "thought [it] to have been introduced from Eurasia by [the migration of] wild birds." (Id.) It then spread within the United States and, eventually, to Rembrandt's farms. Despite Rembrandt's efforts to contain the infection, it spread, forcing Rembrandt to euthanize over nine million birds. (Seigfreid Decl. ¶ 2.)

Rembrandt tendered claims under the Policy to Illinois Union for losses at its infected farms, but Illinois Union denied coverage. Rembrandt then commenced this action, alleging that Illinois Union had breached the Policy. With liability discovery complete, both parties have moved for summary judgment.[1] In the Court's view, however, genuine issues of material fact preclude summary judgment here.[2]

---

[1] The parties have reserved the issue of damages until after a liability determination. (Doc. No. 27.) As such, the nature and extent of Rembrandt's claimed losses are not before the Court, and Rembrandt has moved for summary judgment only as to liability.

[2] Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The Court views the record in the light most favorable to Illinois Union when considering Rembrandt's Motion and in the light most favorable to Rembrandt when considering Illinois Union's Motion. Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011). Either way, summary judgment is improper if the record contains genuine issues of material fact. Id.

The crux of this action is the mode by which the bird flu was transmitted onto Rembrandt's farms.[3] But there is no consensus on how the bird flu spread in general—in June 2015, shortly after Rembrandt's farms became infected, APHIS announced that there was "not substantial or significant enough evidence to point to a specific pathway or pathways for the []spread of the virus" within the United States. (Veenstra Decl. Ex. 4.) And the record is no more precise regarding the bird flu's arrival at Rembrandt's farms.

Rembrandt contends that bird flu spread to its farms by air and as a result of human activity. Its expert, Dr. Osterholm,[4] identified other farms eight to twenty miles away that contracted the bird flu prior to Rembrandt's farms. (Osterholm Dep. 23–24; Osterholm Decl. ¶ 21.) He opined that these farms depopulated their infected livestock in gas chambers, creating a "virus cloud" that carried the bird flu to Rembrandt's farms. (Veenstra Decl. Ex. 6, 11.) Research supports Dr. Osterholm's theory—bird flu was "detected in air samples taken inside and outside infected poultry houses, supporting the idea that the virus can be transmitted through the air." (Id. Ex. 4.) Further, "wind data shows a relationship between sustained high winds (25 mph or greater for 2 days or longer) and an increase in the number of infected farms 5 to 7 days later." (Id.) More specifically, "depending on wind speed, wind direction, and other meteorological

---

[3] The answer to this question bears on whether the virus "dispers[ed], release[d], migrat[ed], or seep[ed] . . . on, in, into, or upon" Rembrandt's farms under the Policy's insuring clause, and whether the virus spread due to human activity, thereby triggering an exception to the Policy's exclusion for naturally occurring materials.

[4] Illinois Union moved to exclude Dr. Osterholm's testimony, but the Court has denied the Motion by separate Order.

parameters . . . farms located between [4.35 and 9.3] miles from an infected farm could be at a low to moderate risk of [airborne] transmission." (Veenstra Decl. Ex. 30 at 35.)

However, Illinois Union contends airborne transmission is unlikely given the distance (eight to twenty miles) between Rembrandt's farms and the infected farms identified by Dr. Osterholm. As mentioned above, the risk of infection at these distances was low to moderate (id.), and Dr. Osterholm acknowledged that certain "farm flocks with high [airborne] potential exposure . . . did not become infected." (Id. Ex. 6 at 5.) Assuming airborne spread is possible, Dr. Osterholm opined that it was *enhanced*—not necessarily *caused*—by depopulation activity at neighboring farms. (Id. Ex. 11 at 6.) Indeed, APHIS found an increased risk of airborne spread "the entire length of time [the bird flu was] present on a farm, ranging from 10 days before onset of clinical signs to 17 days after depopulation began" (Davison Decl. Ex. 3 at 35), supporting the possibility of airborne transmission unaided by human activity.

Despite extensive briefing, on this record, the Court is simply not in a position to determine *as a matter of law* how the bird flu spread to Rembrandt's farms and, accordingly, neither party is entitled to summary judgment. Fed. R. Civ. P. 56(a). Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Rembrandt's Motion for Partial Summary Judgment (Doc. No. 100) and Illinois Union's Motion for Summary Judgment (Doc. No. 111) are **DENIED**.


Date:  January 12, 2017                              s/Richard H. Kyle
                                                     RICHARD H. KYLE
                                                     United States District Judge