UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rembrandt Enterprises, Inc.,            Civ. No. 15-2913 (PAM/HB)

          Plaintiff,

v.            **ORDER**

Illinois Union Insurance Company,

          Defendant.

---

This matter is before the Court on the parties' Motions in Limine. Trial in this matter is set to begin on Monday, December 4, 2017.

**A. Plaintiff's Motions**

    **1. HPAI as a naturally occurring material**

Plaintiff moves the Court for an order precluding Defendant from claiming that highly pathogenic avian influenza ("HPAI") is a naturally occurring material, arguing that the naturally occurring material exception in the insurance policy is ambiguous as a matter of law. Defendant opposes the Motion.

This Court previously held that fact issues precluded a legal determination on the applicability of the naturally occurring material exclusion. (Docket No. 146.) Plaintiff's Motion is, in effect, dispositive. And in denying the parties' cross-motions for summary judgment, the Court held that this exclusion was not ambiguous. The Motion will therefore be denied, and the parties should be prepared to establish whether the exclusion for naturally occurring materials applies and whether the HPAI virus spread to Plaintiff's facilities as a result of human activity.

**2.    Layer hen replacement cost and USDA indemnity payments**

Plaintiff asks the Court to preclude any testimony or evidence "relating to (1) the costs it would have incurred to replace or repopulate its egg-laying hens in the normal course of business at any point after the euthanizations, and (2) any indemnity payments or reimbursement it received from the USDA." (Pl.'s Mot. in Limine (Docket No. 233).) Defendant previously moved for partial summary judgment on this issue, arguing in part that the cost to repopulate Plaintiff's layer hens is not a "remediation cost" under the policy because Plaintiff replaces layer hens in the normal course of its business. (Docket No. 178.) This Court rejected that argument, concluding that Defendant "ignores that [Plaintiff] had to significantly expedite its replacement cycle due to the forced euthanization, replacing some birds almost twice as rapidly as normal." (Order at 7.) This Court also declined to give the remediation-cost provision such a limited reading because Defendant could have drafted it to exclude the cost of replacing "damaged property that might have eventually required replacement" if it so desired. (Id. at 8.)

Defendant argues again that Plaintiff will receive a windfall because it would have replaced some or all of the euthanized hens regardless of the HPAI outbreak. But the Court has already rejected Defendant's argument that Plaintiff's cost to repopulate its layer hens is not a remediation cost, and Defendant has identified no other basis for the Court to conclude that evidence of the cost to repopulate Plaintiff's laying hens in the normal course of business is relevant.

Defendant also argues that evidence that Plaintiff received indemnity payments from the USDA is relevant because it was germane to the opinion of Defendant's expert,

2

Matthew Woodcock. But Defendant fails to identify any basis for the Court to conclude such evidence is relevant to the issues at trial, other than quoting Woodcock's references to the USDA indemnity payments in his expert report. This Motion will be granted.

**B.  Defendant's Motions**

**1.  Testimony on insurance policy construction**

Defendant moves the Court for an order precluding Plaintiff from eliciting testimony on the construction of its insurance policy. Plaintiff does not intend to offer any such testimony. The Motion will therefore be denied as moot.

**2.  Availability of avian influenza endorsements or exclusions**

Defendant asks the Court to preclude Plaintiff from advising the jury as to the availability of avian influenza endorsements or exclusions. Plaintiff does not intend to advise the jury on this issue. The Motion will therefore be denied as moot.

**3.  Defendant's initial bases for denial of coverage**

Defendant moves the Court for an order excluding all testimony or references to its initial bases for its denial of coverage, arguing that this information is undisputed and not relevant. Defendant also claims that this information, even if relevant, is highly prejudicial because the jury may speculate that Defendant's current basis for denying coverage is meritless because Defendant had no legitimate basis to deny coverage in the first instance. Plaintiff contends that this information is relevant because it provides the jury with necessary background information. But advising the jury that Defendant initially denied coverage, without stating the bases for the denial, is sufficient background information. Plaintiff also contends that Defendant's initial bases for denial of coverage

3

demonstrate its shifting interpretations on the insurance policy's definition of "pollution condition." But any discussion of allegedly shifting interpretations is not relevant to the issues before the jury.

The Motion will be granted. Plaintiff may advise the jury that Defendant initially denied coverage, but Plaintiff may not advise the jury of the initial bases for that denial.

### 4. Defendant's claims-handling process and decisions

Defendant requests that the Court preclude Plaintiff from introducing any testimony or reference to its claims-handling process and decisions. Plaintiff only opposes this motion to the extent that Defendant seeks to exclude evidence of its initial denial of Plaintiff's claim. Because the Court concluded above that such testimony and evidence is not relevant, this Motion will be granted.

### 5. Plaintiff's expert opinion and supporting evidence

Defendant seeks to preclude Dr. Michael Osterholm, Plaintiff's expert witness, from testifying that vaccinators were the source of the HPAI outbreak. Because Plaintiff will not elicit such testimony from Dr. Osterholm, this portion of the Motion will therefore be denied as moot.

Defendant also seeks to preclude Plaintiff from introducing (1) portions of Dr. Osterholm's expert opinion in his November 8, 2016, declaration and other supporting articles, (2) evidence that delay in responding to the outbreak constitutes human activity, (3) testimony about unidentified farms that allegedly initiated the HPAI outbreak at Plaintiff's facilities, and (4) two additional exhibits that Defendant argues are irrelevant and untimely disclosed. Plaintiff opposes exclusion of this evidence and testimony.

4

### a. Dr. Osterholm's expert opinion

Defendant asks the Court to exclude the opinions in Dr. Osterholm's November 8, 2016 declaration, arguing that the opinions are either untimely disclosed or irrelevant. But Defendant made this same argument to support its previous motion to exclude Dr. Osterholm's expert testimony. (Docket No. 139 at 2.) The Court rejected this argument by denying Defendant's motion to exclude expert testimony. (Docket No. 147.) The Court will therefore deny the Motion related to Dr. Osterholm's November 8, 2016, declaration.

Defendant next seeks to exclude five articles on which Dr. Osterholm will rely that Plaintiff did not disclose until November 2017. Plaintiff contends the first study is the published version of a previously disclosed manuscript by the University of Minnesota. The second study, Plaintiff states, updates USDA epidemiological reports to which both parties' experts cite. The third study, published in November 2017, addresses the airborne transmission of HPAI by USDA researchers. The fourth study addresses airborne transmission of the HPAI virus, and although the publication date is unclear, the study period did not end until August 31, 2017. The last article, published in March 2017, addresses the HPAI virus infection in the feathers of infected ducks and chickens. Defendant contends that these articles must be excluded because Plaintiff offers no justification for their untimely disclosure. But these articles are either the published version of unpublished studies Plaintiff had previously disclosed, or studies that were not published until 2017. The Court concludes that Plaintiff's untimely disclosure of these articles is substantially justified, and the Motion as to these articles will be denied.

### b.     Evidence that delayed response is human activity

Defendant asks that the Court preclude any opinion or evidence that the delay in responding to the HPAI outbreak is "human activity," because (1) "inactivity is the antonym of activity," (2) the HPAI outbreak cannot be the simultaneous result of natural process and human activity, and (3) an insured could always argue that humans could respond faster to a naturally occurring condition. (Docket No. 240 at 9.) Defendant also refers to an article authored by Dr. Osterholm to support its position. Plaintiff opposes this Motion to the extent that it relates to USDA's protocol and effect on the amplification of HPAI. These disputes are clearly matters that the parties can address in cross-examination of their respective expert witnesses. The Court will therefore deny this portion of the Motion.

### c.     Testimony about unidentified farms

Defendant seeks to exclude Plaintiff from testifying about any unidentified farms that allegedly initiated the HPAI outbreak at its facilities because the specific locations of these farms were never disclosed, and without knowledge of the exact locations, Defendant cannot independently verify that these farms could have been the source of the HPAI outbreak at Plaintiff's facilities. But Plaintiff disclosed to Defendant all of the evidence that formed Dr. Osterholm's opinion on this issue, including USDA data on the likely source farms, data from the Iowa State Veterinarian, and a map from the Minnesota Board of Animal Health. Indeed, Dr. Osterholm stated that the "exact address of the suspected HPAI source sites would not meaningfully change the analysis." (Osterholm Decl. (Docket No. 136) ¶ 24.) The Motion will therefore be denied as it relates to

testimony about the approximate location of unidentified farms.

### d. Exclusion of two of Plaintiff's exhibits

Defendant seeks to exclude two of Plaintiff's trial exhibits. The first exhibit is an appellate brief that Defendant wrote in an unrelated matter before the Tenth Circuit Court of Appeals, in which Defendant stated the release of fly ash and binding agent into the air is a classic example of environmental pollution. (Docket No. 134-1 at 46.) Plaintiff contends that this exhibit is relevant because it demonstrates Defendant's shifting viewpoint on environmental contamination as stated in the policy. The Court will grant the Motion as it relates to Defendant's Tenth Circuit brief because it is not relevant and could serve to confuse or mislead the jury.

The second exhibit is a white paper about HPAI that Defendant's expert, Dr. Sherrill Davison, authored. Plaintiff opposes the exclusion of this exhibit. This Motion will be denied as to the white paper because the Court concludes it is relevant and admissible, and its allegedly untimely disclosure is harmless or substantially justified.

### 6. Testimony of Todd Boettcher

Defendant moves the Court for an order precluding Plaintiff from calling Todd Boettcher, arguing that Plaintiff did not properly or timely disclose him as a witness. Boettcher completed a USDA questionnaire three weeks after one of Plaintiff's facilities was quarantined, in which one question asked whether Plaintiff observed "dead wild birds in the barns or outside of the barns in the past 14 days." Boettcher apparently answered this question in the affirmative.

Defendant intends to refer to this questionnaire and argue that Plaintiff "observed

dead wild birds, both large and small, outside of its barns in the 14 days prior to the first clinical signs of HPAI." (Def.'s Trial Br. (Docket No. 234) at 6.)  Plaintiff claims that this question is ambiguous and that Boettcher's answer is misleading because he did not understand to what 14-day period the questionnaire refers.  Boettcher "meant to address the dead wild birds [he] observed after the HPAI events had occurred." (Boettcher Decl. (Docket No. 137) ¶ 6.)  Plaintiff also claims that it did not identify Boettcher as a potential witness until Defendant disclosed shortly before the close of discovery that it had obtained the USDA questionnaire through a Freedom of Information Act request.

Plaintiff's disclosure, even if untimely, was substantially justified under these circumstances.  See Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 902 (8th Cir. 2000).  Plaintiff may call Boettcher as a rebuttal witness, and this Motion will be denied.

### 7.     Evidence of the total amount of Plaintiff's loss

Defendant requests that the Court exclude all testimony or references to the total amount of Plaintiff's loss, contending that the losses sustained at four of Plaintiff's six facilities are not at issue and therefore not relevant.  Plaintiff only intends to introduce evidence of losses arising out of the two facilities in dispute; it does not intend to introduce evidence of any loss arising out of those four facilities.  However, Plaintiff maintains that it plans to advise the jury that the insurance policy has a $7,000,000 limit that includes $5,000,000 in business interruption coverage and up to $2,000,000 in remediation cost coverage.  The Court concludes that this information is relevant and admissible.

The Court will therefore grant in part this Motion to the extent that it is limited to testimony or references of Plaintiff's losses that arose out of four of its facilities that are not at issue. But Plaintiff may introduce testimony or evidence with respect to the total amount of its loss arising out of the two facilities at issue, which includes the policy's $7,000,000 limit.

### 8. Defendant's initial attempt to retain Dr. Osterholm

Defendant asks the Court to preclude Plaintiff from advising the jury of its attempt to retain Dr. Osterholm, arguing that it would result in unfair prejudice. Plaintiff contends that this information is relevant to Dr. Osterholm's credibility. But introducing evidence that Defendant initially attempted to retain Dr. Osterholm is clearly improper bolstering of an expert witness's credibility. See Ferguson v. Michael Foods, Inc., 189 F.R.D. 408, 410 (D. Minn. 1999) (Doty, J.). The Motion will be granted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Rembrandt's Motion in Limine (Docket No. 222) is **DENIED**;

2. Rembrandt's Motion in Limine (Docket No. 233) is **GRANTED**;

3. Illinois Union's Motion in Limine to Preclude Testimony of Witnesses Regarding Construction of Insurance Policy (Docket No. 235) is **DENIED as moot**;

4. Illinois Union's Motion in Limine to Preclude Plaintiff from Advising the Jury as to Availability of Avian Influenza Endorsements or Exclusions (Docket No. 238) is **DENIED as moot**;

5. Illinois Union's Motion in Limine to Preclude Plaintiff from Advising the Jury of Defendant's Initial Coverage-Denial Basis (Docket No. 239) is **GRANTED**;

6. Illinois Union's Motion in Limine to Preclude Plaintiff from Introducing Any Claims-Handling Evidence (Docket No. 237) is **GRANTED**;

7. Illinois Union's Motion in Limine to Preclude the Untimely Opinions in Dr. Osterholm's November 8, 2016 Declaration, the Newly Disclosed Materials on Which He Plans to Rely, and Other Improper and Untimely Evidence (Docket No. 240) is **GRANTED in part and DENIED in part**;

8. Illinois Union's Motion in Limine to Preclude Todd Boettcher from Testifying (Docket No. 241) is **DENIED**;

9. Illinois Union's Motion in Limine Excluding Evidence as to Total Amount of Rembrandt's Loss (Docket No. 242) is **GRANTED in part**; and

10. Illinois Union's Motion in Limine to Preclude Plaintiff from Advising the Jury of Defendant's Attempt to Retain Dr. Osterholm (Docket No. 243) is **GRANTED**.

Dated:  November 30, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge